**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                                             :

| | |
|---|---|
| LAURA RAMOS and CYNTHIA BAKER, | : |
| | : |
| Plaintiffs, | : |
| | :    Case No. 3:16-cv-1938-BRM-LHG |
| v. | : |
| | : |
| RARITAN VALLEY HABITAT FOR | : |
| HUMANITY, *et al.*, | : |
| | :         **OPINION** |
| | : |
| Defendants. | : |

_____:

**MARTINOTTI, DISTRICT JUDGE**

     Before this Court are: (1) Defendant United States Department of Housing and Urban Development's ("HUD") Motion to Dismiss (ECF No. 109) and (2) Defendant Division of Housing and Community Resources, House Assistance Programs' ("DCA")[1] Motion to Dismiss or in the alternative for Summary Judgment (ECF No. 114).[2] Plaintiffs Laura Ramos ("Ramos") and Cynthia Baker ("Baker") (together with Ramos, "Plaintiffs") oppose the motions. (ECF No. 118.) Having reviewed the submissions filed in connection with the motions and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for reasons set forth below and for good cause shown, Defendants' motions are **GRANTED in part and DENIED in part**.

_____

[1] HUD and DCA will collectively be referred to as "Defendants."

[2] The Court declines to treat DCA's Motion as one for summary judgment. Plaintiffs have not had the benefit of discovery to develop a record and the Court has not provided Plaintiffs with notice nor given them an opportunity to respond to the Motion as if it were one for summary judgment.

# I.   BACKGROUND

For the purposes of these motions to dismiss, the Court accepts the factual allegations in the First Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F. 3d 224, 228 (3d Cir. 2008). Further, the Court considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

This matter arises out of Plaintiffs' struggle to purchase a single-family residence in Hunterdon County that meets their medical and other housing needs. Plaintiffs, both of whom suffer from a variety of disabilities and physical handicaps, currently reside in a garden-level, two-bedroom, one-bathroom apartment in Hunterdon County.[3] (ECF No. 89 ¶¶ 8, 16.) Their apartment is part of a special needs complex in a rural area in Hunterdon County, which "makes it difficult for Plaintiffs to access medical doctors, grocery stores, and other basic conveniences of living in a more developed part of the County." (*Id.* ¶ 17.) The apartment is adjacent to a quarry, which Plaintiffs allege causes the accumulation of dust throughout the area, triggering their disabilities. (*Id.*) Plaintiffs rent this apartment with the assistance of a Section 8 voucher, which they have received from DCA for over ten years.[4] (*Id.* ¶ 16.) Plaintiffs also receive Social Security Disability Income. (*Id.*)

---

[3] Ramos suffers from, among other disabilities, Multiple Chemical Sensitivity, Vocal Cord Dysfunction, asthma, vision issues, and reactive airways. (*Id.* ¶ 15.) She requires "assistive mobility devices including a power wheelchair, rolling walker, or a quad cane." (*Id.*) Baker suffers from, among other disabilities, balance issues, reactive airways, spinal stenosis, and hearing deficits. (*Id.*) She also occasionally uses a cane as needed. (*Id.*)

[4] DCA "is responsible for effectuating all housing programs and services, policies, and procedures in accordance with state and federal law." (*Id.* ¶ 11.)

Plaintiffs contend the current apartment "fails to meet their basic needs." (*Id.* ¶ 18.) Specifically, they require a third bedroom to accommodate their medical and physical therapy equipment and to perform physical therapy exercises. (*Id.*) Plaintiffs also require service dogs but have been denied same due to the lack of space in their current apartment and lack of fenced backyard. (*Id.*) Plaintiffs also contend the apartment presents many respiratory issues since the landlord requires quarterly exterminations to be performed. (*Id.* ¶¶ 19-20.) Similarly, the scents from soaps utilized in the shared washer and dryers and lack of an exhaust vent in the Plaintiffs' kitchen presents an issue for Plaintiffs. (*Id.* ¶ 20.)

### A. Habitat for Humanity and Raritan Valley Habitat for Humanity

Beginning in 2005, Plaintiffs attempted to purchase a single-family, handicap accessible, three-bedroom ranch home in Hunterdon County through Raritan Valley Habitat for Humanity ("RVHFH").[5] (*Id.* ¶¶ 24, 27.) RVHFH "is designed for low-income families who are committed to building [a] better place to raise their families." (*Id.* ¶ 26.)

> Potential RVHFH homeowners are those: (1) currently and for the prior year either living or working in Hunterdon, Somerset, or one of the adjacent counties . . .; (2) currently living in inadequate housing or paying rent that is too high; and (3) able to afford the repayment of the interest-free mortgage and the utilities, taxes, insurance, and maintenance expenses.

(*Id.*)

However, due to several Habitat for Humanity ("HFH") and RVFHF policies, which Plaintiffs allege have a disparate impact on them, they have endured many years of obstacles. (*Id.* ¶ 37.) HFH and RVHFH have certain requirements and policies, which Plaintiffs allege have a

---

[5] RVHFH is a local affiliate of the non-profit HFH. (*Id.* ¶ 25.) HFH sets the policies with which local affiliates, such as RVHFH must comply. (*Id.* ¶ 30.) HFH monitors its affiliates to ensure they comply with the policies of HFH and applicable federal law. (*Id.*)

disparate impact on individuals with disabilities that they are not willing to forgo to accommodate Plaintiffs. Specifically, HFH and RVHFH require that homeowners through their program "[b]e willing to work on their own home and the homes of others in the habitat community (this work is called 'Sweat Equity')." (*Id.* ¶ 31.) They require that all residential applicants complete the Sweat Equity requirement prior to purchasing the house. (*Id.*) Plaintiffs, however, cannot perform the Sweat Equity requirement necessary for the application process due to their disabilities and handicaps. (*Id.* ¶ 32.)

HFH and RVHFH also has a policy of accepting only two checks per month for mortgage payments. (*Id.* ¶ 34.) This has a disproportionate impact on Plaintiffs since they need to pay with two checks plus the Section 8 housing voucher. (*Id.*) RVHFH also builds almost exclusively two-story, duplex homes that are not handicap accessible. (*Id.* ¶ 35.) Only upon request will RVHFH build handicap adaptable homes at an additional cost. (*Id.*) RVHFH's income-setting guidelines for eligibility are greater than and more restrictive than HUD's, and, pursuant to the guidelines, RVHFH currently only offers homes to families of three. (*Id.* ¶ 36.) Plaintiffs also requested RVHFH send them visually accessible documents and materials, using Verdana font size fourteen or larger, and digital copies of forms, which was not accommodated. (*Id.* ¶ 46.)

In 2013, Plaintiffs submitted a letter to the Board of RVHFH detailing the disability discrimination they had incurred by them and requesting that they be permitted to apply to a home being built in Kingwood Township in Hunterdon County. (*Id.* ¶ 38.) In 2014, Plaintiffs applied for a three-bedroom ranch, which was denied on April 8, 2014. (*Id.* ¶¶ 39-40.) Plaintiffs were rejected, in part, for being recipients of Section 8 funding. (*Id.* ¶ 53.)

## B.     DCA

Plaintiffs have also encountered several obstacles with DCA. DCA has made it difficult for Plaintiffs to transition from Section 8 rental vouchers to the Section 8 homeownership program. (*Id.* ¶ 55.) DCA failed to provide HUD-related forms in the appropriate print font and size for Plaintiffs, failed to provide written responses to Plaintiffs' accommodation requests, refused to meet with Plaintiffs in their apartment or via video conferencing to discuss the Section 8 Homeownership program.  (*Id.* ¶¶ 62-64.)

In September 2010, Plaintiffs filed an administrative complaint with HUD "to eliminate the disability discrimination they faced as participants in the Section 8 rental program." (*Id.* ¶ 56.) On March 29, 2013, HUD, DCA, and Plaintiffs entered a Conciliation and Voluntary Compliance Agreement (the "Conciliation Agreement"), which required DCA to:

> (1) provide fair housing education for DCA staff; (2) revise policies and practices to eliminate disability discrimination; (3) promulgate procedures for DCA staff to process and manage requests for reasonable accommodations from Section 8 applicants with disabilities; and (4) appoint a Section 504 coordinator to assist individuals with disabilities in the Section 8 process.

(*Id.* ¶ 57.) Pursuant to the Conciliation Agreement, DCA was required to create a "Reasonable Accommodation Policy and Procedures: chapter for the "Administrative Plan." (*Id.* ¶ 58.) Plaintiffs contend, however, DCA failed to comply with these policies and procedures, thereby intentionally discriminating against them. (*Id.*)

### C. HUD

Plaintiffs contend they encountered similar obstacles with HUD.[6] Like DCA, HUD failed to grant Plaintiffs' requests for reasonable accommodations, which they deem necessary in order to file grievances to gain equal access to housing programs. (*Id.* ¶ 70.) HUD also: (1) failed to provide Plaintiffs with large print documents to utilize in drafting Fair Housing Complaints; (2) refused to allow Plaintiffs to make fair housing complaints via telephone; (3) failed to provide written confirmation summarizing oral communications with Plaintiffs. (*Id.* ¶¶ 71-76.)

### D. Procedural History

On April 7, 2016, Plaintiffs initiated this action by filing a *pro se* Complaint. (ECF No. 1.) The Complaint alleged several claims of discrimination against approximately thirty-six defendants. (*Id.*) On April 26, 2016, Plaintiffs filed a motion seeking the appointment of pro bono counsel, which was granted on November 28, 2016. (ECF No. 48.) Esptein Becker & Greene, P.C. was appointed as pro bono counsel on June 4, 2018. (ECF No. 72.)[7]

On November 7, 2018, Plaintiffs filed a First Amended Complaint, reducing the number of defendants from thirty-six to four (HFH, RVHFH, DCA, and HUD) and alleging: (1) disparate impact under the Fair Housing Act ("FHA"), Rehabilitation Act ("RHA"), and Americans with Disabilities Act ("ADA") against RVFHF and HFH; (2) failure to accommodate under the FHA, RHA, and ADA against all Defendants; (3) intentional discrimination under the FHA, RHA, and ADA against all Defendants; and (4) violation of the Equal Credit Reporting Act against HFH and RVHFH. (*See* ECF No. 89.) Both RVHFH and RFH filed answers. (ECF Nos. 96 and 103.) HUD

---

[6] HUD "is responsible for effectuating all housing laws, policies, and procedures in accordance with federal law." (*Id.* ¶ 12.)

[7] The Court attempted to appoint pro bono counsel several times, but there were several conflicts.

and DCA filed the pending motions to dismiss. (ECF Nos. 109 and 114.) Plaintiffs opposed both motions. (ECF No. 118.)

## II.   LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). An assertion of Eleventh Amendment immunity is a challenge to a district court's subject-matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.") (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). Typically, when jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject-matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, because "Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense," and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Christy v. Pa. Turnpike Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994); *see also Carter v. City of Phila.*, 181 F.3d 339, 347 (3d Cir. 1999).

When evaluating a Rule 12(b)(1) motion to dismiss, a court must first determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject-matter jurisdiction in fact, apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the motion consists of a facial attack, the court "must accept the complaint's allegations as true," *Turicentro v. Am. Airlines*, 303 F.3d 293, 300 n.4 (3d Cir. 2002), and "must only consider the allegations of the complaint and documents

referenced therein and attached thereto, in the light most favorable to the plaintiff," *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d. at 891). However, if the motion involves a factual attack, "the court may consider evidence outside the pleadings." *Id.* at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)). Here, the motions to dismiss for lack of jurisdiction are a facial attack, because the United States asserts it is immune from Plaintiffs' claims as pled. Therefore, on this question of immunity, the Court's review is limited to the allegations in the First Amended Complaint, which the Court must accept as true and view in the light most favorable to Plaintiffs.

### B.      Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426 (emphasis in original).

## III.   DECISION

HUD argues the Court lacks subject-matter jurisdiction over claims against it because Congress has not waived sovereign immunity under the FHA, ADA, and RHA against federal agencies. (*See* ECF No. 109-1.) DCA also argues the First Amended Complaint must be dismissed

as barred by the Eleventh Amendment. (ECF No. 114-1 at 9-12.) In the alternative, DCA argues Plaintiffs failed to sufficiently plead claims against them. (*Id.* at 12-26.) The Court will discuss each in turn.

### A.    Immunity as to HUD

The Court begins its analysis by addressing whether it lacks subject-matter jurisdiction over Plaintiffs ADA, FHA, and RHA claims for prospective injunction and monetary damages against HUD.

### 1.    ADA

The United States, as a sovereign, is immune from suit unless it has consented to be sued. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Because sovereign immunity is jurisdictional in nature, a court does not have jurisdiction over matters brought against the United States unless immunity has been waived. *Id.* Only Congress can waive this immunity, and such waiver must be explicit. *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). Consent to suit "must be unequivocally expressed" in statutory text and cannot be implied. *White–Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010).

Plaintiffs assert HUD violated Title II of the ADA. "Title II of the ADA 'forbids discrimination against persons with disabilities in . . . public services, programs and activities.'" *Coleman v. United States*, No. 15-1942, 2016 WL 1241800, at *3 (D.N.J. Mar. 30, 2016) (quoting *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004)). "Title II applies only to 'any State or local government, any department, agency, special purpose district, or other instrumentality of a State or States or local government, and the national Railroad passenger Corporation.'" *Emory v. U.S. Dep't of Hous. & Urban Dev.*, No. 05-00671, 2006 WL 8451336, at *4 (D. Haw. Aug. 31, 2006) (citations omitted). It "does not apply to the federal government, its agencies or employees," and

10

therefore, the United States is immune from suit. *Id.*; *see Smith v. Pallman*, 420 F. App'x 208, 214 (3d Cir. 2011); *Venter v. Potter*, 435 F. App'x 92, 95 n.1 (3d Cir. 2011) (stating "the entire federal government is excluded from the coverage of the ADA"); *United States v. Wishart*, 146 F. App'x 171, 173 (9th Cir. 2005) ("By definition, the ADA does not apply to the federal government."); *Luna v. Roche*, 89 F. App'x 878, 881 n.4 (5th Cir. 2004) (same); *Dyrek v. Garvey*, 334 F.3d 590, 597 n.3 (7th Cir. 2003) (same); *Sarvis v. United States*, No. 99-0318, 2000 WL 1568230, at *2 (2d Cir. 2000) (same); *Whooten v. Bussanich*, No. 04-223, 2005 WL 2130016, at *7 (M.D. Pa. Sept. 2, 2005) (stating the ADA does not contain a waiver of sovereign immunity so it does not apply to the federal government); *Wilson v. MVM, Inc.*, No. 03-4514, 2004 WL 765103, at *11 (E.D. Pa. Apr. 1, 2004) (noting the ADA does not apply to any agency or branch of the federal government). "Therefore, the federal government is not subject to Title II of the ADA, and Title II provides no cause of action against [HUD]." *Emory*, 2006 WL 8451336, at *4 (citing *Gray v. United States*, 69 Fed. Cl. 95, 101 n.5 (2005) ("had [the plaintiff] sought relief against the United States under Title II of the ADA, . . . no court would have been able to exercise subject-matter jurisdiction over the matter")). Therefore, all ADA claims against HUD must be denied.

### 2.    FHA

Plaintiffs further assert claims against HUD under the FHA. HUD argues "there has been no waiver of the Federal Government's sovereign immunity to allow claims against it under the FHA." (ECF No. 109-1 at 9.) Plaintiffs "do not dispute" Congress did not abrogate sovereign immunity when it enacted the FHA as to monetary relief. (ECF No. 118 at 35.) The Court agrees. *See Turner v. Sec. of U.S. Dep't of Housing & Urban Dev.*, 449 F.3d 536, 539–40, n.5 (3d Cir.2006); *Peet v. Sidney*, No. 17-1870, 2019 WL 542939, at *3 (D. Minn. Jan. 24, 2019); *Super v. J. D'Amelia & Assocs., LLC*, No. 09-831, 2010 WL 3926887, at *12 (D. Conn. Sept. 30, 2010);

*Gregory v. S.C. Dep't of Transp.*, 289 F. Supp. 2d 721, 726 (D.S.C. 2003), *aff'd*, 114 F. App'x 87 (4th Cir. 2004).

However, Plaintiffs claim HUD could be sued for prospective injunctive relief through the Administrative Procedures Act ("APA"). (ECF No. 109-1 at 35-37.) HUD, on the other hand, concedes Plaintiffs can sue HUD for prospective injunctive relief under the APA, but argues Plaintiffs have not met the elements to sue HUD under the APA. (ECF No. 109-1 at 16-17.) "The United States has expressly waived sovereign immunity through the Administrative Procedure Act for any action for nonmonetary relief brought against the United States." *Peet*, 2019 WL 542939, at *3 (citations omitted). Indeed, for claims for nonmonetary relief under the FHA, such as prospective injunctive relief, courts have found sovereign immunity can be been waived through the APA. *Id.*; *Gregory*, 289 F. Supp. 2d at 726.

However, Plaintiffs have not satisfied the elements to sue under the APA. Such elements are: "1) be a person adversely affected by a statute or regulation, 2) be the subject of a final agency action, and 3) have no other adequate remedy." *Gregory*, 289 F. Supp. 2d at 727 (citing 5 U.S.C. § 702). HUD maintains, and the Court agrees, Plaintiffs have failed to allege there has been a *final* agency action. In September 2010, Plaintiffs filed an administrative complaint with HUD, which resulted in the Conciliation Agreement. (ECF No. 89 ¶¶ 56-57.) However, Plaintiffs fail to plead, and the Court cannot ascertain, whether that was the final agency action. Therefore, Plaintiffs' claims against HUD pursuant to the FHA must be dismissed.

### 3.    RHA

Plaintiffs assert disability discrimination claims against HUD under Section 504 of the RHA for both monetary and injunctive relief. HUD argues the Court has no jurisdiction over this claim because the federal government has not waived its sovereign immunity. (ECF No. 109-1 at

5-8.) HUD is correct in part. The United State Supreme Court addressed this issue in *Lane v. Pena*, 518 U.S. 187 (1996). The question in that case was "whether Congress has waived the Federal Government's sovereign immunity against awards of monetary damages for violations of [Section 504 of the RHA.]" *Id.* at 189. The Court found that although the government had waived its sovereign immunity against monetary damages under Section 501, it did not waive them under Section 504. *Id.* at 192-94. As such, the Court upheld the lower courts' rulings granting injunctive relief sought but denying damages under Section 504. *Id.* Accordingly, the Court finds the monetary relief sought by Plaintiffs under the RHA is denied but that Plaintiffs may seek injunctive relief.

### 4.    Standing

"In an abundance of caution," HUD argues in the alterative that even if this Court finds there is subject-matter jurisdiction over any of Plaintiffs' claims against HUD, Plaintiffs are not entitled to prospective injunctive relief because they lack standing. (ECF No. 109-1 at 12 and ECF No. 119 at 2.) Specifically, HUD contends Plaintiffs "cannot show that they are likely to suffer future injury from HUD's conduct." (ECF No. 109-1 at 14.)

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. *Ballentine v. United States*,

486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."); *Kaufman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) ("[W]e must not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing.")).

"Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine*, 486 F.3d at 810 (citing *Warth v. Seldin,* 422 U.S. 490 (1975); *Storino v. Borough of Point Pleasant Beach,* 322 F.3d 293, 296 (3d Cir. 2003)). Nevertheless, on a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). However, "*general factual allegations of injury resulting from the defendant's conduct may suffice*." *Lujan,* 504 U.S. at 561 (emphasis added).

Article III "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id*. (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

As in *Spokeo*, "[t]his case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements." *Id.* (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (citations omitted). "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id.* "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* (explaining that "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real,' and not 'abstract'"). "Concreteness, therefore, is quite different from particularization." *Id.*

Here, HUD asserts a facial challenge. Therefore, the Court considers the allegations in the Amended Complaint in the light most favorable to Plaintiffs. HUD merely argues Plaintiffs cannot show they are likely to suffer future injury from HUD's conduct. The Court disagrees. The Amended Complaint alleges ongoing violations of federal discrimination law conduct by HUD. HUD has: (1) failed to, in the past or present, provide Plaintiffs with large print documents to utilize in drafting Fair Housing Complaints; (2) refused to allow Plaintiffs to make fair housing complaints via telephone in the past and refuses to allow them to do it in the future; (3) failed to provide written confirmation summarizing oral communications with Plaintiffs in the past and refuses to do it in the future. (ECF No. 89 ¶¶ 71-76.) The Court finds Plaintiffs may bring an RHA claim against HUD for injunctive relief.[8]

---

[8] HUD does not argue the RHA claim should be dismissed for a failure to state a claim. As such, the Court will not address the merits of the claim.

Accordingly, HUD's Motion to Dismiss all FHA and ADA claims against it is **GRANTED**. It's Motion to Dismiss RHA claims against it is **DENIED in part and GRANTED in part**: denied as to claims seeking injunctive relief but granted as to claims seeking monetary damages.

### B.    Immunity as to DCA

#### 1.  ADA

DCA argues the Court lacks subject-matter jurisdiction over Plaintiffs' ADA claim. (ECF No. 114-1 at 10-11.) DCA acknowledges that Eleventh Amendment immunity was abrogated for certain types of ADA claims against a State but not "this case because Plaintiffs' [First Amended] Complaint does not allege that DCA or any of its employees actually violated the Fourteenth Amendment." (*Id.* at 11.) Plaintiffs argue Congress abrogated sovereign immunity under the ADA. (ECF No. 118 at 32-34.)

"The Supreme Court has held that Congress, in enacting the ADA, did abrogate state sovereign immunity." *Heine v. Comm'r of Dep't of Cmty. Affairs of N.J.*, No. 11-5347, 2014 WL 4199203, at *6 (D.N.J. Aug. 22, 2014) (citing *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363–364 (2001) and 42 U.S.C. § 12131 *et seq.*) (noting that the ADA specifically states that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter"))). The Eleventh Amendment therefore does not bar ADA claims asserted against DCA.

#### 2.    FHA

DCA argues the Court lacks subject-matter jurisdiction over Plaintiffs' FHA claim. (ECF No. 114-1 at 12.) Plaintiffs do not dispute Congress did not abrogate sovereign immunity when

enacting the FHA. (ECF No. 118 at 35.) Instead, they argue that while they are precluded from receiving an award of monetary damages against the DCA for a violation of the FHA, they are entitled to prospective injunctive relief. (*Id.*) The Court agrees with Plaintiffs.

"It has repeatedly been held that Congress did not abrogate state sovereign immunity when it enacted the Fair Housing Act." *Heine*, 2014 WL 4199203, at *6 (citing *Gregory*, 289 F. Supp. 2d at 721; *Welch v. Century 21 Chimes Real Estate Inc.*, 90–3410, 1991 WL 29950, at *1 (E.D.N.Y. Feb. 27, 1991) ("Because plaintiffs complaint seeks money damages from [defendant] [for a violation of the FHA], money which would come from the state treasury, the eleventh amendment acts to bar this suit.")). However, while the Eleventh Amendment precludes an award of damages against state officials for violation of the FHA, it allows for prospective injunctive relief. *Project Life, Inc. v. Glendening*, 139 F. Supp. 2d 703, 711 (D. Md. 2001) *aff'd*, 46 F. App'x 147 (4th Cir. 2002) (finding that "[w]hile Eleventh Amendment immunity precludes the award of damages against . . . Defendants, the Court has the authority, under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), to issue an injunction to compel State officials to comply with Federal law"). The Court finds Plaintiffs may bring an FHA claim against HUD for injunctive relief.[9]

### C. Failure to Accommodate

Plaintiffs allege they requested several reasonable accommodations from DCA in

> efforts to own a home, including but not limited to, larger font sizes for all state and federal forms, conducting meetings regarding their housing issue at their home or via video conference, effective communications including email summaries of phone meetings and video conferences, and for DCA to respond to all of Plaintiffs'

---

[9] DCA does not contest that it is subject to suit in Federal Court for a violation of Section 504 of the RHA. Indeed, Congress amended Section 504 to provide that "[a] state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973." *Koslow v. Pennsylvania*, 302 F.3d 161, 169 (3d Cir. 2002) (quoting 42 U.S.C. § 2000d-7(a)(1)). The Eleventh Amendment therefore does not bar RHA claims asserted against DCA for monetary or injunctive relief.

> requests in writing in text no smaller than Verdana 14 pt font, in
> black text on white background.

(ECF No. 89 ¶ 102.) They contend, however, DCA did not provide these reasonable accommodations. (*Id.* ¶ 103.) DCA contends Plaintiffs failed to plead a prima facie case of discrimination. (ECF No. 114-1 at 12-18.) In the alternative, DCA argues that even if the Court finds Plaintiffs have established a prima facie case for discrimination, they made accommodations that were reasonable and feasible. (*Id.* at 19-26.)[10]

Courts considering claims raised under the FHA, ADA, and RHA have noted they contain "similar language and related purposes." *Solivan v. Valley Hous. Dev. Corp.*, No. 08-2722, 2009 WL 3763920, at *3 (E.D. Pa. Nov. 9, 2009). "Both the ADA and the R[H]A provide that public entities must reasonably modify their 'policies, practices, or procedures' to avoid discrimination against individuals with disabilities, as long as the modification does not fundamentally alter the nature of the institution's services, programs, or activities or otherwise impose undue burden." *Kongtcheu v. Constable*, No. 12-6872, 2016 WL 270075, at *5 (D.N.J. Jan. 20, 2016), *aff'd*, 674 F. App'x 216 (3d Cir. 2016) (citations omitted). The RHA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

---

[10] The DCA's opposition attaches email exhibits to demonstrate Plaintiffs' allegations, that the DCA failed to accommodate them, are false. The Court cannot and will not consider anything beyond the four corners of the First Amended Complaint. The Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir.1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426 (emphasis in original). These exhibits are neither integral to nor explicitly relied upon in the First Amended Complaint. The Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228.

under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by an such entity." 42 U.S.C. § 12132. The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 2604(f)(1). Under the FHA discrimination is defined as "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

Because requirements of the FHA, ADA, and RHA are similar, courts have determined the FHA analysis can be applied to ADA and RHA claims, where claims are brought under all three statutes. *Lapid Ventures, LLC v. Twp. of Piscataway*, No. 10-6219, 2011 WL 2429314, at \*5 (D.N.J. June 13, 2011); *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 45–46 (2d Cir. 2002). "A plaintiff may prove a violation of the FHA[], ADA or [RHA] in one of three ways: (1) showing disparate treatment, also termed intentional discrimination, (2) showing disparate impact, or (3) showing a refusal to make reasonable accommodations." *901 Ernston Rd., LLC v. Borough of Sayreville Zoning Bd. of Adjustment*, No. 18-2442, 2018 WL 2176175, at \*6 (D.N.J. May 11, 2018) (quoting *Lapid Ventures, LLC*, 2011 WL 2429314, at \*9). Here, Counts II and III of Plaintiffs' First Amended Complaint allege DCA failed to accommodate them and intentionally discriminated against them based on their disabilities. (*See* ECF No. 89.)

To determine whether a violation of either the ADA, RHA, or FHA has occurred, the Court must first determine if there is a prima facie showing of disability discrimination. *Kongtcheu*, 2016 WL 270075, at \*5. To establish a prima facie showing of disability discrimination under, a plaintiff

must demonstrate: "1) he or she has a disability; 2) he or she is otherwise qualified; and 3) he or she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability." *Id.* (citation omitted). Once there has been a prima facie showing of disability discrimination, the Court can engage in a reasonable accommodation analysis. *Id.*

Here, "DCA acknowledges that Plaintiffs are disabled persons, that they are qualified participants in the Section 8 voucher program, and that DCA received federal assistance." (ECF No. 114-1 at 15.) However, DCA argues Plaintiffs have not alleged "they were denied their benefits because of their disability." (*Id.*) The Court does not agree. The First Amended Complaint alleges DCA made it difficult for Plaintiffs to transition from Section 8 rental vouchers to the Section 8 homeownership program. (ECF No. 89 ¶ 55.) DCA failed to provide HUD-related forms in the appropriate font and size for Plaintiffs, failed to provide written responses to Plaintiffs' accommodation requests, and refused to meet with Plaintiffs in their apartment or via video conferencing to discuss the Section 8 Homeownership program. (*Id.* ¶¶ 62-64.) The Court finds this is sufficient to plead Plaintiffs were denied their benefits because of their disability, and in turn to establish a prima facie case of disability discrimination.

Next, the Court must undertake a reasonable accommodation analysis. To determine whether DCA failed to reasonably accommodate Plaintiffs under the FHA, RHA and ADA, the Court must consider: "1) whether Plaintiff[s'] requested accommodation/modification was necessary to afford her an equal opportunity to use and enjoy the dwelling; and 2) whether Plaintiff[s'] requested accommodation was reasonable, or whether it imposed an undue hardship on [DCA]." *Solivan*, 2009 WL 3763920, at *5. To demonstrate that a requested accommodation is necessary, Plaintiffs' must demonstrate that, "but for the accommodation, [they] will likely be

denied an equal opportunity to enjoy the house of [their] choice." *Id.* (quoting *Lapid–Laurel, LLC v. Zoning Bd. Of Adjustment of Twp. Of Scotch Plains*, 284 F.3d 442, 461 (3d Cir. 2002).

Here, without the accommodation of forms in the appropriate font sizes and visits to their apartment or via video conferencing, Plaintiffs cannot apply for housing that meets their medical needs because they have trouble with their vision and physically cannot make it to the office visits. As such, Plaintiffs have plead sufficient facts as to whether their requested accommodation is necessary given their medical condition.

Whether an accommodation is reasonable is a question of fact to be decided by a jury. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 524 (D.N.J. 2008); *see Buskirk v. Apollo Metals*, 307 F.3d 160, 170 (3d Cir. 2002) ("Generally, the question of whether a proposed accommodation is reasonable is a question of fact.") Because the determination of whether an accommodation is reasonable is a question of fact to be decided by a jury, the Court finds Plaintiffs have sufficiently pled a reasonable accommodation claim under the FHA, RHA, and ADA at this juncture. Accordingly, DCA's Motion to Dismiss Count II against it is **DENIED**.[11]

### D. Intentional Discrimination

Plaintiffs allege DCA "took adverse actions against Plaintiffs, which was motivated by Plaintiffs' disabilities." (ECF No. 89 ¶ 115.) Specifically, they argue DCA intentionally disregarded "policies it created under the 'Reasonable Accommodation Policy and Procedures' chapter it added to its Administrative Plan, did not comply with the Conciliation Agreement, and refused to afford Plaintiffs with an equal opportunity to a single-family, handicap accessible home within their chosen community of Hunterdon County." (*Id.*)

---

[11] Plaintiffs, however, are limited to seeking prospective injunctive relief as to their FHA accommodation claim against DCA for the reasons articulated above.

To plead an intentional discrimination claim, "there must be evidence of discriminatory purpose motivating the action." *901 Ernston Rd., LLC*, 2018 WL 2176175, at \*6 (citing *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3d Cir. 2005)). "The discriminatory purpose need not be malicious or invidious, nor need it figure in 'solely, primarily, or even predominantly' into the motivation behind the challenged action." *Id.*

Plaintiffs allege DCA ignored their requests, "made comments suggesting that Plaintiffs' need to conduct in-home interviews was unreasonable and unnecessary," and disregard the Conciliation Agreement's requirement to provide Plaintiffs with denials of reasonable accommodation within five days. (ECF No. 89 ¶¶ 55-69.) The Court finds Plaintiffs plead sufficient facts of discriminatory treatment and intent at this stage of the litigation. Accordingly, DCA's Motion to Dismiss Count III against it is **DENIED**.[12]

## IV. CONCLUSION

For the reasons set forth above: (1) HUD's Motion to Dismiss all FHA and ADA claims against it is **GRANTED**; (2) HUD's Motion to Dismiss the RHA claims against it is **DENIED in part and GRANTED in part**, specifically, denied as to claims seeking injunctive relief but granted as to claims seeking monetary damages; (3) DCA's Motion to Dismiss Count II against it is **DENIED**; and (4) DCA's Motion to Dismiss Count III against it is **DENIED**.[13]


**Date:** September 12, 2019          */s/ Brian R. Martinotti*
                                      **HON. BRIAN R. MARTINOTTI**
                                      **UNITED STATES DISTRICT JUDGE**

---

[13] Plaintiffs, however, are limited to seeking prospective injunctive relief as to their FHA claims against DCA for the reasons articulated above.